Good morning. May it please the court, my name is Sylvia Talley and I represent the appellate Matthew McCoy. I would like to reserve 5 minutes for rebuttal please. Mr. McCoy was charged with two counts of production of child porn, specifically as it relates to two videos that were found on a flash drive. The videos were recorded in October 2017 and in one of those videos we see a woman in the mirror, known as MB, sitting on the toilet. She then stands up in the nude facing the mirror. In the other video she is seen exiting the shower, drying off her body and bending over. Now the main issue before this court is whether Mr. McCoy normally, intentionally, and voluntarily used MB to engage in sexually explicit conduct for the purpose of producing a visual depiction of that show MB engaging in such conduct. Now it's undisputed that MB decided on her own to take a shower at the McCoy's house. Would you explain how she ended up in that specific bathroom? That was not the only facility within the home she could have used. That's correct. She was initially, she wanted to take a shower and she was at the McCoy's house. She was initially going to use the guest bathroom. The guest bathroom had toys in the tub. So she asked Mr. McCoy what to do with the toys and he supposedly told her to just use the master bathroom. So she used the bathroom with the cameras in his direction? The guest bathroom also had cameras and she was going to use that bathroom on her own. He didn't direct her to that bathroom. He mindedly told her, instead of just moving the toys, it would be just more convenient for her to use the master bathroom. Also, whether she actually engaged in sexual explicit conduct, there is no sexual explicit conduct in this case. As that term was defined in 2256. There is no dispute that Ms. MB, she neither engaged in sexual intercourse, she didn't engage in masturbation or bestiality or the masochistic or sadistic abuse. The government has decided on the fact that she was nude in the videos and apparently her genitals were visible in the videos. Do you agree that her genitals are visible in the video? Did Mr. McCoy concede that? I believe they were visible only in the second video. I don't believe they were visible in the first video. The one where she's standing in front of the mirror? That's the first video. In the second video, she was getting out of the shower and she was drying off and she bent over. Okay, so I'm sorry. Which one does Mr. McCoy concede actually had a visual depiction of her genitals? The second video when she was exiting the shower. Okay, and so you don't think the one where she's standing in front of the mirror and sort of twirling around, that there's nothing visible there in your view? She was standing in the mirror jumping up I believe and I think at one point like her pubic area was exposed, but not her genitals or anything like that. And even though her genitals were exposed, it doesn't mean that she engaged in the lixivious exhibition of her genitals. As pointed out in the opening brief, the Haley court construes that term to mean that the minor displayed their genitals genitals, anus, or pubic area in a less formal manner converting the condition of the sex act. We don't have that here. So for your argument to be successful, does this court have to adopt the Haley approach? Or if we follow our own case law, is there a way for you to win as well? Or are you hanging your hat on Haley? No, ma'am. No, Your Honor. I think even if you apply the voice factors, it weighs against the finding of lixiviousness. And speaking of the voice factors, there's the videos. Once there were charts in the indictment, there was no focus on her genitalia. They're not the videos. The setting of the video is not sexually suggestive. She's not engaging in conduct suggesting that she's willing to engage in sex acts. She's not in a natural pose. She's new. We concede that she's new, but that's all that there is. Just nudity. Those different descriptions that you just described, those are findings for the jury to determine whether the images meet those standards? Yes, they may apply to the voice factors in deciding whether the videos, yes, meet the standard of lixiviousness. So the jury's fact finding is reviewed at what standard? On what degree of difference do we give to the jury's factual conclusions about the nature of the images? I believe if it was a credibility finding, it's virtually unreviewable. But the factual findings, I believe it's reviewed for clear error. Well, it would be clear error certainly for a district judge. But wouldn't we resolve any doubt about their factual findings in favor of the verdict? That is correct. But also the jury can't resort to speculation or conjecture to reach the verdict. And is that the position you take, is that they simply speculate it? That's correct, Your Honor. Counsel, wouldn't we have to find that no reasonable jury could find that the videos depicted lixivious display constituting sexually explicit conduct? I can hear you. Would you repeat the question? Wouldn't we have to determine that no reasonable jury could conclude that the videos depicted lixivious display constituting sexually explicit conduct? That's correct. And that's our position, that videos do not depict the lixivious exhibition of the genitals. Also, I would like to talk about the constructive amendment, the variance of the still images, how they should not have been admissible. The images that the government relied on, basically they told the jury to look at these images in deciding whether the lixiviousness element is met. As I understood it, the district court limited it to his intent, or at least the government limited the purpose of those zoomed in shots for intent. Is that your understanding? Yes. Yes, Your Honor. But I think the government took it even further, telling them that they need to rely on these images in determining whether he produced child pornography. And also, the instructions, they specifically says pictures. And I know during the trial, the court gave a verbal cautionary instruction that he's only on trial for these videos. But those instructions, those written instructions with the word picture, and the government telling them at closing that they can rely on these pictures in determining whether Mr. McCoy produced child pornography. I mean, that takes it outside. Is it your view, and I didn't study the closing arguments, but your position is that the government's argument to the jury in closing was not, you can use these pictures to determine his intent. It was, you can use these pictures to assess whether this video is a lixivious display in a bigger sense? That's correct. What language in the closing are you relying on? Do you have it at the ready? Yes. I can give you the exact, like the record, like page number or anything like that. But I believe, I recall that the government said that, specifically said that in deciding whether Mr. McCoy produced child pornography, you can look at these images. But I'm paraphrasing. Also, by instructing the court on the Joyce factors, I believe that that was error as well. But I know the court, this court has held numerous times that you can apply the Joyce factors in deciding whether the image falls into the lixivious exhibition of the genitals. But as the court, the D.C. Circuit held in Hilly that the premise of the Joyce factors is flawed. Because the Joyce court believed that when the amendment, the 1984 amendment amended the sexual specific conduct definition, that Congress was broadening that term. And that's basically conflicts with what the Supreme Court said. And also would be the sixth, I think it's the sixth factor, whether the image was intended to appeal to the, oh, attended to the sexual in nature. I'm sorry. Is whether the image was intended to elicit a sexual response in the viewer. The court in Hilly said that that's also conflicts with the Supreme Court case that says that lixivious, lew, means hardcore sex acts. Well, that's under Hilly, but our precedent is to follow the dust factors. Isn't that right? That is correct. And again, Mr. McCoy's position is that even following the Joyce factors, the videos do not depict the lixivious exhibition of the genitals. I would like to preserve the remaining of my time for rebuttal, please, sir. Thank you, Mr. Miss Bryant. Thank you, Your Honor. Good morning. And may it please the court. My name is Kristen Bryant and I represent the United States in this case. The depictions of a bent over 15 year old girl's genitals looking up from below and behind her is a lascivious exhibition of her genitals. They say pictures. How are you distinguishing between the the expanded photographs or are you speaking of. I'm speaking solely of the videos, Your Honor. And I say pictures. Yes, Your Honor. I believe as we stated in our brief, the term visual depiction encompasses videos and pictures. And you're right, I should use the term videos. And in going to that real quick and to Judge Kelly's question about whether we argued in closing that we were relying on the pictures or the videos, I would note on page 257 of the transcript, Mr. White, who did the first close in this case, stated the videos are the child pornography we're talking about. But these are a clue referencing the still photographs. These are your insight into what his intent was. So we specifically told the jury it's the videos that is the child pornography that we were referencing. And we're going back to those two videos. They absolutely depict lascivious exhibition of the minor's genitals. In the first video, when the court watches it, which is approximately a minute long, the minor is on the toilet. She gets up. She goes and faces the mirror. But then she turns, and she turns specifically to the camera, and you see her genitals at that point. There's no question that her genitals are obviously seen in that video. And a jury of 12 people found, who are the fact finders of whether something constitutes lascivious exhibition of the genitals, found that that was a lascivious exhibition of her genitals. Counselor, I'd like to get to what I think is the crux of this case. Sure. And I'd like to quote from your brief at page 30, where you say, M.B.'s innocent acts of undressing and taking a shower on the videos are lascivious because of McCoy's intent for them to be sexual. Isn't that reasoning directly contradictory to this court's Wallenfang decision in 2009 and Kemmerling in 2002? In those cases, we said the relevant inquiry is not whether the pictures in issue appeal to the defendant's sexual interest, but whether on their face they appear to be of a sexual character. It seems to me your whole case here is based on the intent of the defendant rather than what the videos actually depict. No, Your Honor. I respectfully disagree with you. I think our case, certainly, that is something that the court could consider. It's a DOS factor that this court has consistently adopted in considering whether or not something constitutes lascivious exhibition of the genitals. But when you look with that factor, which obviously isn't an exclusive factor and is one that a jury can consider but is not required to consider, but coupling it with the other DOS factors, one, whether the focal point of the image is on the minor's genitals. So let me ask about that. I'm not aware of any allegation, at least in your brief, that there was a focus. Your Honor, I think our argument, yes, is that there was a focus. I think we argue that based on the DOS factors, considering them as a whole, we may not have said specifically 1, 2, 3, 4, 5, 6, 7, 8, but we certainly argue that the focus of the video when we discuss her bending over and her genitals being revealed, there is a focus of them. It seems to me all you've shown is nudity here. And our cases say that nudity is not enough. In fact, the statute requires sexually explicit conduct. So what is sexually explicit about MB, showering, and drying off? That in and of itself certainly is not sexually explicit, but the fact when we take the entire circumstances of this case, that we have a defendant who is technologically savvy with installing cameras. Well, the intent is certainly there. I think you have to look beyond that, too. How can we look beyond the image when that seems to be the focus of the offense? Because I think in looking at the DOS factors, and that allows you to look at the image but also look at the producer's intent, to look at the focal point, whether the setting of the image is sexually suggestive, which courts have found that a bathroom is. And we know in Mr. McCoy's instance that he had experience at the angles of the camera in the closet going out into the bathroom, what it captured. So he knew what he was going to get when he directed MB from the guest bathroom that had cameras which sat above the toilet, which was not going to depict MB, a lascivious exhibition of her genitals, because he knew, based on the prior pictures that were introduced into evidence, that that merely depicted individuals from their heads down. What would this case have looked like without the images that you submitted? Because it did seem like there was a lot of emphasis, just to follow up on some of these questions, on Mr. McCoy's intent. And that seems pretty clear. I think your photo showed that. But what if the court had not allowed you to put those photos in, the zoomed-in photos? What would your argument have been to the jury about why this was, on its face, just the videos? Our argument would have been, he could have let her shower in the guest bathroom and not have captured any video. But he knew that he had the camera in the master bathroom, specifically focused on an area that would have caught her going in and out of the shower. So that goes to intent. So what else, besides moving off the intent of Mr. McCoy, what else would you argue? The fact that the video, which would have probably been over 30 minutes in its entirety, that there were just two clips of it. The clips before she gets in the shower and the clips when she gets out of the shower. That the video starts when she's naked and the video ends when she's clothed. Okay, so then you've got the nudity. The fact that she's bending over, that she's looking in the mirror, the fact that being in the bathroom enough is going to capture the nudity. And again, looking at the DOST factors. Counsel, by your own admission on page 30 of your brief, you're relying on the subjective intent of McCoy. That's why you're claiming that they're lascivious. It's because of his intent, not what the picture actually shows. Kamerlingh requires something else. Your Honor, I do believe that Kamerlingh does require something else. But I would also point the court to its decisions in Ward, where a case that's very similar to this, where the defendant put a camera in the shower that depicted the minor in that case, showering, doing exactly what we have here. And in Ward, while he may have touched her and directed her which ways to move, here Mr. McCoy already knew that his camera angle was going to depict exactly what he wanted. Which was her, if any time she moved and faced the camera, she got in and out of the shower, that it was going to depict her lascivious exhibition of her genitals. So I understand the court's reliance on those cases, but I do think that Ward, which was decided after Kamerlingh, supports our argument that it is a lascivious exhibition of the genitals. And further, just going back... But lascivious, the definition, our case law requires that it be sexual in nature. What was sexual in nature about these videos? One, I think looking at the producer's intent, that that made it sexual in nature. If our case law says you don't look at the intent of the defendant, you look at the pictures on their face. I don't believe it says that you can't consider it. That's one of the other factors, but in order for it to be within the definition of lascivious, it has to be sexual in nature. Correct, and I think looking at the producer's intent is one of those factors that we can consider. And also determining whether it's sexual in nature, relying back on the factors, the focus was on the genitals, because it only depicted her when she was naked. So that was the purpose of the video, was a lascivious exhibition. Whether the setting was sexually suggestive, again, it was in the bathroom. He knew it was going to get her getting in and out of the shower. He specifically directed her... Can I follow up on that one, the sexually suggestive bathroom? Is that the same thing, knowing that she'll be naked in the bathroom, which is, if you're going to shower, that's a reasonable expectation. Is that the same thing as saying something's a sexual setting? I believe, yes, I believe it is. And when you look, the Tenth Circuit and Wells and the Third Circuit and Larkin both discussed that showers and bathrooms can be sexually suggestive settings. And so, again, the jury was certainly able to determine whether or not they factored that in, if it was sexually suggestive or not. The third, whether the minor was depicted in an unnatural pose or inappropriate attire, she is bending over nude. There were still images of that, which, again, goes back to show his intent in creating these two videos at the time. Counsel, why didn't you discharge him with producing child porn for the still image that was enlarged? Your Honor, because I don't know when those still images were created. So it was a proof problem? To me, it was a proof problem, yes. So you charged him for videos? I knew the creation date. I knew that he had specifically clipped portions of the videos that would guarantee that she was naked when he clipped them. As we argue in our closing argument, it started when she became naked. It stopped when she went in the shower and he couldn't see her. It started back again when she got out of the shower. The second she puts her underwear on, the video stops. Why not charge attempt? Because I believe that he committed the act. He produced those images, and the images depicted lascivious exhibition of her genitals. The fourth DOS factor that the jury considered was whether the minor is fully or partially clothed. She was specifically nude. I don't believe the fifth factor applies, whether the image suggested coyness or willingness to engage in sexual activity. Six, whether the image is intended to elicit a sexual response in the viewer. Obviously, in this case, based on the evidence that we have of Mr. McCoy being savvy in recording videos, knowing exactly what he was going to get when he put that camera in the closet, the clips of the videos that he made, then the clips of the still images, and the fact that he had to have moved those videos from a DVR to the flash drive, again, all goes to show his intent. So, on that last one, the intent of the viewer, it seems to me your argument, when you say it goes to intent, you're defining the viewer in that DOS factor as McCoy. Is that correct? Yes, Your Honor, I am. So, are you suggesting that whether or not someone other than Mr. McCoy, who has a tendency to be attracted to this sort of thing, are you suggesting that that is not relevant in the jury's assessment as to whether another viewer would consider it how they would consider it? No, I'm not suggesting that. I think, considering taking this case on its face, and just the specific facts of this case, that it went to whether or not Mr. McCoy intended to elicit a sexual response. In different cases where we may have possession of child pornography, I believe then that you would look at the intent of other viewers, but specifically in this case, I think it goes to Mr. McCoy's intent. The court asked earlier, do you have to follow Hilly, or can this case fall on the lascivious exhibition? I think it's clear that this court has consistently held, has consistently defined lascivious exhibition of the genitals, not requiring a lascivious act on the part of the minor, and that Hilly is an aberrant decision, that there aren't any other circuits that are following Hilly. But again, just going back and looking at our lascivious definition, and whether the conduct in this case is lascivious exhibition of the genitals, I think, in following the DOS factors, that the jury was well within the means to find that the videos in this case constitute a lascivious exhibition of the genitals. And if there are no other questions, I would surrender the balance of my time. Seeing none. Thank you.  Ms. Bryant. I want to talk about how the government says that Mr. McCoy directed MB to that bathroom because he knew what kind of images he would capture. I think the government is resorting to speculation. There's nothing, there was no proof about his, what he thought he would capture when he told MB to go to that bathroom. I'd like to ask you about the first DOS factor, the focal point of the visual depiction. What was the evidence in terms of the placement or angle of the camera? We certainly have cases where if the camera is aimed so that it captures the genitals, for example, that that would be pretty dispositive. What was the situation here? I'm not aware of anything in the record that showed a focus. There was no focus, basically. The camera was, I think, sitting on the floor in a speaker box. It was hidden. And it captured the entire body. There was no focus specifically on the genital area. It was not set up at an angle where it would only capture the genital area or anything like that. It basically captured the entire body. And that's the case with both of the videos. Is that correct? That is correct. Her entire body was in both the videos. There was no focus point in the videos. And I believe during the trial in the government's brief, they do not argue that the focus point of the videos is on the genitalia. Also, the government talked about how he clipped out images of her when she was in the shower. He exposed those files. But still, the images that were captured, the images that he clipped, they're still just nude images. That's it. The videos are just videos of her in the nude with no focal point on the genitals. Also, in the Ward case, there the court said that him positioning the minor, instructing the minor to take a shower and trying to kiss her afterwards, that proved that he intended to create child pornography, that he intended to capture a lascivious exhibition of her genitals. Like I said, we don't have that here. We have no manipulation on the part of Mr. McCoy, besides him telling her that she could use the master bathroom to take a shower, and that only proves that he intended to capture her in the nude. If the court doesn't have any questions, I'll relinquish the remainder of my time. I don't see any additional questions. Okay. Thank you. Thank you, Ms. Talley. Thank you also, Ms. Bryant. The court appreciates counsel's argument and presentations to the court on a case of sensitive nature, and we appreciate your professionalism in doing so. We will continue to study the briefing and the record materials in the case and render decision in due course. Thank you.